[S.F. No. 23229. In Bank. Aug. 11, 1975.]

MURIEL JOHANSEN, Plaintiff and Appellant, v.
CALIFORNIA STATE AUTOMOBILE ASSOCIATION
INTER-INSURANCE BUREAU,
Defendant and Respondent.

**COUNSEL**

Russell W. Federspiel and Raymond H. Hawkins for Plaintiff and Appellant.

Robert E. Cartwright, Edward I. Pollock, William H. Lally, Arne Werchick, Elmer Low, Ned Good, David B. Baum, Stephen I. Zetter-

berg, Robert G. Beloud and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

Ropers, Majeski, Kohn, Bentley & Wagner, Michael J. Brady and Eugene J. Majeski for Defendant and Respondent.

Haight, Lyon, Smith & Dickson and Roy G. Weatherup as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**TOBRINER, J.**—In a prior action for damages arising out of an automobile accident, plaintiff Muriel Johansen obtained a judgment of $33,889.30 against Gary and Joyce Dearing, a sum well in excess of the Dearings' automobile insurance policy limits. Although the Dearings' insurance carrier, defendant in the instant action, assumed the Dearings' defense in the earlier suit, it refused, during the course of that litigation, to accept a settlement offer within policy limits because it believed that the accident did not fall within the policy's coverage.

In a subsequent declaratory judgment action, however, the Court of Appeal determined that defendant's policy did in fact cover the accident. (*Cal. State Auto. Assn. Inter-Ins. Bureau* v. *Dearing* (1968) 259 Cal.App.2d 717 [66 Cal.Rptr. 852].) The insurer then paid plaintiff the portion of the judgment falling within the policy limits but refused to accept liability for the balance. The Dearings thereafter assigned their rights against the insurer to Ms. Johansen, who commenced the present action to recover the unpaid portion of her judgment. The superior court ruled in favor of defendant insurer, and plaintiff now appeals.

For the reasons discussed below, we conclude that the judgment must be reversed. California authorities establish that an insurer who fails to accept a reasonable settlement offer within policy limits because it believes the policy does not provide coverage assumes the risk that it will be held liable for all damages resulting from such refusal, including damages in excess of applicable policy limits. In the instant case, defendant contended and the superior court agreed that such liability does not attach if the insurer's denial of coverage was made in good faith. As we explain, however, nearly 20 years ago, in *Comunale* v.

*Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883], our court rejected an identical contention proffered by an insurer who, like the instant defendant, failed to accept a settlement offer because of doubts as to policy coverage. No decision in the intervening years has questioned the vitality of the *Comunale* holding or reasoning; nor has defendant presented any sound basis for departing from that authority.

On February 26, 1963, plaintiff Muriel Johansen and her husband suffered injuries in an automobile accident caused by the negligence of Gary Dearing, the minor son of Joyce Dearing. At the time of the accident, an insurance policy issued by defendant California State Automobile Inter-Insurance Bureau (insurer) covered the Dearings, affording policy limits of $10,000 for bodily injury for each person, $20,000 for each occurrence and $5,000 for property damage.

On December 27, 1963, Ms. Johansen sued the Dearings for personal injuries and property damage stemming from the accident. Although the insurer maintained that the policy did not provide coverage, it agreed to assume the defense of the Dearings but reserved its right to litigate the coverage issue. On May 1, 1964, the insurer, seeking to obtain a judicial determination as to whether the policy afforded coverage, instituted a declaratory relief action naming Ms. Johansen and the Dearings as defendants.

On December 10, 1964, Ms. Johansen, plaintiff in the third party suit, offered to settle her claim for $10,000, the full amount of the policy. Although defendant conceded the virtual certainty of a judgment against the Dearings in excess of the policy limits, it refused to adjust the matter, stating that it would only be willing to offer the policy limits if it were judicially determined that the policy did in fact provide coverage.[1]

Despite defendant's efforts to expedite the declaratory relief action, the personal injury action ultimately went to judgment first, resulting in an award against the Dearings of $33,889.30, a sum far in excess of the insurance policy limits. In the declaratory relief action, although the trial court initially ruled in favor of defendant on the coverage issue, that

---

[1]Subsequently, on March 18, 1965, defendant offered to place in escrow the amount of its policy, bearing interest at the rate of 7 percent pending resolution of the declaratory relief action, which would be paid to Ms. Johansen provided that the issue of coverage was resolved against defendant. The offer was rejected.

determination was subsequently reversed on appeal. (*Cal. State Auto. Assn. Inter-Ins. Bureau* v. *Dearing, supra,* 259 Cal.App.2d 717.) Thus, a final judgment holding that the policy did extend coverage to the Dearings was entered only on September 5, 1968, over four years after the initial filing of the action.

The insurer subsequently paid Ms. Johansen $19,692.19. Since interest on the judgment in the personal injury suit accounted for $8,302.89 of this sum, an outstanding judgment of $22,500 remained against Gary Dearing. Thereafter, Gary Dearing assigned his rights against the insurer to Ms. Johansen in exchange for her promise to release him from personal liability on the outstanding judgment. Ms. Johansen then, as assignee of Gary Dearing, commenced the instant action against the insurer to collect the unpaid portion of her judgment.

The trial court, sitting without a jury, rendered judgment in favor of defendant insurer, concluding, in essence, that the insurer's liability could only be predicated upon a finding that its denial of coverage emanated from bad faith, and that in this instance the insurer entertained a bona fide belief that coverage did not exist.[2]

In analyzing this case, we note at the outset that the rights at issue here are those of Gary Dearing, the insured; plaintiff Johansen comes before us only as his assignee.[3] Thus, our inquiry necessarily focusses on the nature of the relationship between the defendant insurer and its insured, Dearing, and the nature and scope of the resultant obligations.

In *Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654, 658, this court, in a unanimous decision, held that "there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement," and that this principle is "applicable to policies of insurance." The implied covenant of good faith and fair dealing imposes a duty on the insurer to settle a claim against its insured

---

[2] The insurer claimed that the automobile driven by Gary Dearing had been acquired over 30 days before the date of the accident, but that its acquisition had not been reported to the insurer—facts which, if proven, would exclude the automobile from coverage under the policy. The Court of Appeal, however, determined that the 30-day limit for reporting the acquisition of the car had not run at the date of the accident.

[3] "An action for damages in excess of the policy limits based on an insurer's failure to settle is assignable, whether the action is considered as sounding in tort or in contract." (*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654; 661.)

within policy limits whenever there is a substantial likelihood of a recovery in excess of those limits. (*Id.*, at p. 659.)

In *Comunale,* two pedestrians (the Comunales) were struck and injured by a truck driven by Percy Sloan. At the time of the accident, Sloan was insured by defendant Traders & General Insurance Company under a policy that contained limits of liability in the sum of $10,000 for each person injured and $20,000 for each accident. When the Comunales filed suit against Sloan, defendant insurer refused to assume his defense; during the course of the litigation it rejected the Comunales' offer to settle their claims for $4,000, maintaining that the accident did not fall within the policy's coverage. The action proceeded to trial and resulted in a judgment of $26,250 against Sloan.

In a subsequent action the court determined that the policy did in fact cover the accident; the Comunales recovered $11,250 from the insurer, the amount of the judgment which fell within the insurance policy limits. Sloan then assigned his rights against the defendant insurer to Comunale who sued the insurer to recover the unpaid portion of his judgment. This court held that the defendant insurer had breached its implied covenant of good faith and fair dealing when, despite the great risk of a recovery in excess of policy limits, it failed to compromise the claim against the insured. We held the insurer liable for the entire amount of the judgment against its insured.

Defendant asserts, however, that the *Comunale* principle does not apply to an insurer whose refusal to settle stems from a bona fide belief that the policy does not provide its insured coverage. In *Comunale,* the insurer asserted a virtually identical claim: "It is not claimed the settlement offer was unreasonable in view of the extent of the injuries and the probability that [the insured] would be found liable, and [the insurer's] only reason for refusing to settle was its claim that the accident was not covered by the policy." (*Id.*, at p. 658.) This court nevertheless held the insurer liable for the excess judgment against its insured, stating: "An insurer who denies coverage *does so at its own risk and although its position may not have been entirely groundless,* if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract." (Italics

added.) (*Id.,* at p. 660.)[4] Accordingly, contrary to the defendant's suggestion, an insurer's "good faith," though erroneous, belief in noncoverage affords no defense to liability flowing from the insurer's refusal to accept a reasonable settlement offer.[5]

Under the standards articulated by the controlling decisions of this court we cannot question the reasonableness of the offer of settlement. ■ We have held that whenever it is likely that the judgment against the insured will exceed policy limits "so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim." (*Id.,* at p. 659; accord *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425, 429.)

Moreover, in deciding whether or not to compromise the claim, the insurer must conduct itself as though it alone were liable for the entire amount of the judgment. (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 429.) Thus, the only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer. Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, or a belief that the policy does not provide coverage, should not affect a decision as to whether the settlement offer in question is a reasonable one.

In the instant case, defendant has repeatedly conceded that in light of the serious character of Ms. Johansen's injuries and the overwhelming evidence that Gary Dearing had been negligent, plaintiff's $10,000 offer

[4]Defendant seeks to avoid the import of this language by asserting that "wrongful" must be equated with "culpable," a proposal for which there is absolutely no support in *Comunale.* Indeed, the language immediately preceding this portion of *Comunale* expressly states that the insurer denies coverage *at its own risk.* Viewed in context, it becomes apparent that a "wrongful" denial of coverage as used in *Comunale* means merely an erroneous denial of coverage required by the policy.

[5]Although defendant asserts that its liability can only be predicated on a finding of specific instances of reprehensible conduct, we rejected this very contention in *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 430 [58 Cal.Rptr. 13, 426 P.2d 173]: "Liability is imposed not for bad faith breach of contract but for the failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing. Moreover, . . . recovery may be based on unwarranted rejection of a reasonable settlement offer and . . . *the absence of evidence, circumstantial or direct, showing actual dishonesty, fraud or concealment is not fatal to the cause of action.*" (Italics added.)

was eminently reasonable. As noted above, the final judgment against the Dearings actually amounted to almost $34,000. ■ "The size of the judgment recovered in the personal injury action when it exceeds the policy limits, although not conclusive, furnishes an inference that the value of the claim is the equivalent of the amount of the judgment and that acceptance of an offer within those limits was the most reasonable method of dealing with the claim." (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 431.)

Defendant's admission of the certainty of liability finds further confirmation in the fact that the Dearings were advised to admit liability in the personal injury suit by counsel retained by defendant. Indeed, abundant evidence in the record indicates that if the Dearings had failed to admit liability, the verdict in the personal injury suit might well have been substantially higher. Accordingly, under the principles articulated in *Comunale,* defendant bore the obligation to. accept the proffered settlement offer.[6]

■ Defendant, however, seeks to avoid the *Comunale* rule by asserting that it only applies to an insurer who breaches its duty to defend in addition to failing to settle. Although in *Comunale* the insurer not only refused to settle but also failed to defend, its liability for the excess judgment did not turn on this latter factor. As this court unequivocally stated: "The decisive factor in fixing the extent of [the insurer's] liability is not the refusal to defend, it is the refusal to accept an offer of settlement within policy limits." (*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at p. 659.)[7]

Defendant secondly asserts that the *Comunale* principle is limited in its application to causes of action arising in contract, and thus, cannot be

[6]Both plaintiff and amicus curiae on behalf of plaintiff urge that we hold that whenever an insurer receives an offer to settle within policy limits and rejects it, the insurer should be held liable *in every case* for the amount of any final judgment. We note that the New Jersey Supreme Court in a well reasoned opinion has adopted this rule. (*Rova Farms Resort Inc.* v. *Investors Ins. Co. of Amer.* (1974) 65 N.J. 474 [323 A.2d 495].) In light of our conclusion that defendant's liability for the excess judgment may be predicated on its rejection of a reasonable settlement offer, we need not resolve this issue.

[7]Indeed, the insurer in *Comunale* sought to use its failure to defend as a *justification* for its refusal to settle on the ground that it did not retain control over the litigation and thus lacked the authority to effectuate a settlement. The court's determination that an insurer who not only refuses to settle but also refuses to defend should not be treated with any greater deference than an insurer who only refuses to settle leads to the inescapable conclusion that the insurer's liability for the excess judgment arises directly from its *failure to settle* within policy limits. (*Id.,* at p. 660.)

utilized in the instant case since plaintiff predicated her claim on a theory of tort liability. Moreover, defendant argues, this court has held since *Comunale* that a breach of the implied covenant of good faith and fair dealing gives rise to a cause of action in tort alone. Thus, according to defendant, its obligation stemmed solely from a tort duty to "act reasonably and in good faith"—a duty it fulfilled when it rejected plaintiff's settlement offer on the basis of honest doubts as to coverage. Defendant's argument displays a misconception of our decisions in this area and the facts in this case.

In the first place, the record does not indicate that plaintiff's cause of action rested on a theory of tort liability. Indeed, from the outset plaintiff has consistently asserted that her claim arises from the theory of liability articulated in *Comunale*. ■ In the second place, a breach of the insurer's obligation to accept a reasonable offer of settlement, a duty included within the implied covenant of good faith and fair dealing, "sounds in both contract and tort." (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 432; accord *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 575 [108 Cal.Rptr. 480, 510 P.2d 1032].) ■ Finally, the scope of the duty imposed upon the insurer by the covenant of good faith and fair dealing does not turn on whether we characterize its breach as contractual or tortious, since, in either case, the duty itself springs from the contractual relationship between the parties. Thus, defendant cannot avoid liability in this case by labelling plaintiff's cause of action as a cause in tort.[8]

Defendant's third assertion that the *Comunale* rule has been modified by two subsequent Court of Appeal cases (*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508 [88 Cal.Rptr. 246]; *Donohue Constr. Co.* v. *Transport Indem. Co.* (1970) 7 Cal.App.3d 291 [86 Cal.Rptr. 632]) cannot be sustained. In *State Farm,* the insurer State Farm was not under a duty to settle since its policy did not actually provide for coverage. Moreover, when the court ruled that defendant Allstate's liability for the excess judgment against its insured could only be imposed if Allstate had failed to settle in addition to refusing to defend, the court merely clarified its previous statement that ordinarily a refusal to defend in and of itself would not necessarily render the insurer

---

[8]Contrary to defendant's assertion, nothing in our recent decisions in *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452, 460-461 [113 Cal.Rptr. 711, 521 P.2d 1103] or *Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 577-578, detracts from this conclusion.

liable for the amount of the judgment in excess of the policy limits.(*Id.,* at p. 528.) Thus, *State Farm* in fact reiterates the *Comunale* principle.

In *Donohue,* the insurer Transport Indemnity Company's asserted breach of its implied covenant of good faith and fair dealing was not even litigated by the parties, and indeed was raised for the first time on appeal. Moreover, since the critical issue in that case revolved around the relative obligations of two insurance carriers to the same insured, the court properly concluded that since "Donohue [the insured] was adequately protected under the U.S. Fire Policy [the primary insurance carrier] the refusal by Transport [the excess insurance carrier] to defend Donohue did not enhance Donohue's liability or exposure to liability." (*Donohue Constr. Co. v. Transport Indem. Co., supra,* 7 Cal.App.3d at p. 304.)[9]

Finally, we cannot accept defendant's complaint that the *Comunale* rule requires an insurer to settle in all cases irrespective of whether the policy provides coverage. Clearly, if defendant's belief that the policy did not provide coverage in the instant case had been vindicated, it would not be liable for damages flowing from its refusal to settle; all that *Comunale* establishes is that an insurer who fails to settle does so "at its own risk." ▮ Moreover, contrary to defendant's assertion, an insurer in defendant's position retains the ability to enter an agreement with the insured reserving its right to assert a defense of noncoverage even if it accepts a settlement offer. If, having reserved such rights and having accepted a reasonable offer, the insurer subsequently establishes the noncoverage of its policy, it would be free to seek reimbursement of the settlement payment from its insured.

▮ Accordingly, applying the principles of *Comunale* and *Crisci,* we conclude the insurer breached its duty to its insured when it failed to accept the reasonable settlement offer.

Defendant additionally argues, however, that even if it did breach its obligation to accept the settlement offer, it is not liable in this action because it is not "responsible" for the damages at issue here. Although defendant's final argument is drawn from various legal theories including the doctrines of proximate cause, mitigation of damages, failure of consideration and prevention of performance, at the heart of all these

---

[9]Defendant also cites cases from other jurisdictions in support of its position. Since these jurisdictions do not adhere to the *Comunale* rule, those cases are inapposite.

hypotheses lies the contention that the excess judgment in this case was caused by the *insureds'* failure to deal in good faith with their insurer. ■ Although we recognize that the implied covenant of good faith and fair dealing inures to the benefit of both parties to a contract and thus requires that *"neither* party will do anything which will injure the right of the other to receive the benefits of the agreement" (italics added) (*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d at p. 658; accord *Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at p. 429), we do not believe that the record supports defendant's contention that the excess judgment can be attributed to their insureds' conduct.

The only incident to which defendant can point that might conceivably have affected the outcome in this case is the insureds' refusal to permit counsel to move to continue the personal injury suit pending resolution of the coverage issue in the declaratory relief action. The gist of defendant's argument is that the insureds' failure to move for a continuance in the personal injury suit resulted in that action being resolved first in time, an event which in turn brought about a judgment in excess of policy limits.

Defendant predicates the argument on the assumption that the prior resolution of the coverage issue, irrespective of its outcome, would have prevented the personal injury suit from going to trial and thereby would have avoided an excess judgment. If the issue of coverage were resolved *in favor* of the insurer, argues defendant, Ms. Johansen would have abandoned the personal injury suit since the Dearings were impecunious; conversely, if the issue of coverage had been resolved *against* the insurer it would have settled the personal injury suit for the policy limits.

Although the excess judgment might have been avoided had the declaratory judgment action gone to judgment prior to the personal injury suit, the record completely fails to sustain defendant's assertion that the insureds can be held responsible for the prior determination of the personal injury litigation. In the first place, early in the personal injury litigation, counsel for the insureds did in fact make a motion to continue that suit pending resolution of the declaratory judgment action; plaintiff objected to any continuance and the trial court denied the motion. Thus, even if the insureds had persisted in their efforts to

continue the personal injury action, it appears unlikely that they would have prevailed.[10]

Moreover, the judgment in the declaratory relief action was entered *almost three and a half years* after the rendition of the judgment in the personal injury suit and almost *five years* after the filing of the personal injury suit. In light of the provisions of Code of Civil Procedure section 583 which authorize dismissal of actions that are not brought to trial within two years from filing, and mandate dismissal if the action is not brought to trial within five years, we cannot believe that the court would have permitted the insureds to postpone trial in the personal injury suit for almost five years. Thus, although the trial court in the instant case concluded as a matter of law that the prior resolution of the personal injury action resulted from the combined efforts of counsel for plaintiffs and the insureds, all the evidence in the record dictates a contrary conclusion.[11]

Although defendant attempts to raise the spectre of collusion between the insureds and Ms. Johansen, it has been unable to point to a single instance in which the insureds by their actions contributed to the size of the ultimate judgment in the personal injury suit.[12] Instead, our examination of the record demonstrates that the insureds' defense of the personal injury suit was exemplary.

[10]Under similar circumstances this court has held that the insurer does not have a right to delay the trial of a personal injury action in which its insured is a defendant pending resolution of a declaratory relief action in which the issue of coverage is to be determined. (*State Farm etc. Ins. Co.* v. *Superior Court* (1956) 47 Cal.2d 428, 433 [304 P.2d 13].)

[11]Moreover, the language of the Nonwaiver or Reservation of Rights Agreement entered into by the insureds and defendant supports plaintiff's contention that the agreement itself appeared to require that the personal injury action be resolved first: "[B]oth parties desire to cooperate to . . . postpone the determination of their respective rights and liabilities under the policy until the questions of the insured's legal liability for damages arising out of such accident and the amount thereof, if any, has been definitely determined."

[12]Defendant relies heavily on the conduct of Hawkins, counsel for the Dearings in the declaratory relief action, to support its position. The record sustains defendant's contention and the trial court's finding that Hawkins and Federspiel, counsel for the Johansens, entered into a fee-splitting arrangement prior to the trial of the personal injury action whereby they would share equally in a portion of any judgment in the personal injury suit against the Dearings. The record indicates, however, that the Dearings were unaware of this arrangement. In the instant case we have no occasion to pass on the propriety of Hawkins' questionable conduct, since our inquiry here is confined to determining whether the insureds contributed to, or were responsible for, the excess judgment against them. The record is utterly devoid of any evidence which would support such a conclusion.

Defendant asserts, however, that the insureds at first resisted counsel's advice to admit liability in the personal injury action although such admission would have been the wisest course of action. We fail to see the significance of this contention. We are not concerned with what the insureds might have done but instead with what they in fact did. It is undisputed that *in fact* the insureds did admit liability. Moreover, it is perfectly understandable that an unsophisticated lay litigant would balk initially at the suggestion that he or she admit liability in a lawsuit. In light of the fact that the insureds did nothing to jeopardize their defense, we are unable to conclude that the personal injury lawsuit was a collusive one. (See *Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788, 802-804 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142].)[13] ▉ Thus, the excess judgment in this case must be attributed solely to defendant's failure to compromise the claim against its insured.

The judgment is reversed and the cause remanded for proceedings consistent with this opinion.

Wright, C. J.; McComb, J., Mosk, J., Sullivan, J., · Clark, J., and Richardson, J., concurred.

Respondent's petition for a rehearing was denied September 10, 1975. Richardson, J., was of the opinion that the petition should be granted.

---

[13]In *Critz,* the defendant insured assigned his rights against the insurer to plaintiff *before* the personal injury suit was tried. In exchange plaintiff agreed not to hold the insured personally liable for the ultimate judgment. The insurer argued that the assignment agreement resulted in the personal injury suit assuming a collusive character by virtue of the fact that the insured would no longer have to bear the consequences of an adverse judgment. The court rejected this contention because the record in that case demonstrated that the *insured had neither done nor said anything which jeopardized his defense of the lawsuit.*