Michael GIBBS, a minor, by and through his guardian ad litem, Tom Gibbs, Plaintiff-Appellee,

v.

STATE FARM MUTUAL INSURANCE COMPANY et al., Defendants-Appellants.

Michael GIBBS, a minor, by and through his guardian ad litem, Tom Gibbs, Plaintiff-Cross Appellant,

v.

STATE FARM MUTUAL INSURANCE COMPANY et al., Defendants-Appellees.

Nos. 74–2347, 74–2444.

United States Court of Appeals, Ninth Circuit.

Oct. 22, 1976.

424

Jack Miller of Nebaker, Stoops, & Sharon, San Francisco, Cal., for Michael Gibbs.

R. S. Cathcart, Leighton M. Bledsoe, of Bledsoe, Smith, Cathcart, Boyd, & Eliot, San Francisco, Cal., for State Farm Mut. Ins. Co.

Before ELY and TRASK, Circuit Judges, and CHRISTENSEN,* District Judge.

TRASK, Circuit Judge.

This is an appeal by an insurance company from a jury verdict and judgment awarded to an injured party for the company's bad faith failure to settle a claim within the limits of an insurance policy. A cross-appeal by the plaintiff asks for punitive damages and a shifting of the burden of proof in the event of a new trial. Jurisdiction of the district court was based upon 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1441 (removal of cases from state courts). We affirm the judgment and dismiss the cross-appeal.

I

On May 20, 1969, Steven Louwaert shot Michael Gibbs in the leg. Michael, age 12, was visiting Steven, also 12, but after a short time a quarrel developed and Steven told Michael to leave the Louwaerts' home. When Michael refused, Steven tried to frighten Michael by pointing a gun at him. Though Steven later stated that he thought the only operative barrel of the shotgun was empty, the gun discharged, wounding Michael in his right leg. In October 1969, as a proximate cause of this injury, his leg was amputated.

The Louwaerts were covered by a liability insurance policy written by the defendant, State Farm Fire and Casualty Company, sued as State Farm Mutual Insurance Company (State Farm). This policy covered the Louwaerts, including Steven, to a limit of $25,000 for "damages because of bodily injury sustained by other persons"; it also obligated the company to pay medical expenses to the limit of $500 to the injured person. The agreement obligated State Farm to "defend any suit against the insured alleging such bodily injury . . . and seeking damages," though the company reserved the right to investigate the claim. The policy did not, however, apply to "bodily injury . . . caused intentionally by or at the direction of the insured."

On May 21, 1969, Edmond Fey, an independent investigator working for State Farm, began his investigation of the case. His initial reports to State Farm pointed out that while there could be a question about whether the shooting was intentional, the local police of Fremont, California, the city in which the accident occurred, had classified the injury as accidental, and he did not believe coverage should be excluded. Fey also conveyed his belief, formed from his conversations with Michael's father, that Mr. Gibbs wanted coverage only to the policy limits and showed no interest in a lawsuit against his friend, Mr. Louwaert. During these conversations, Fey indicated to Mr. Gibbs that coverage would be extended.

On June 3, 1969, a State Farm Claims Committee consisting of Messrs. Perata, Reed, and Constantine met, agreed that the shooting was accidental, and recommended the extension of coverage. On June 10, 1969, however, General Claims Superintendent J. Kirkham Jenner expressed his opinion that the shooting was intentional and advised the Claims Committee to explore the coverage issue further. On June 19, 1969, Mr. Loughran, also a Claims Superintendent, directed Perata to attempt a compromise settlement at no more than half the policy limit.

On June 26, 1969, Fey submitted another status report indicating that Michael might lose his leg and would definitely be totally disabled for at least one year. He also emphasized that there was no legitimate coverage question, and that Mr. Gibbs would soon consult an attorney. On July 10, 1969, the Claims Committee again rec-

* Honorable A. Sherman Christensen, Senior United States District Judge, Salt Lake City, Utah, sitting by designation.

ommended coverage and warned that a lawsuit was imminent.

On July 30, 1969, a "General Claims Decision" recommended a settlement "in the neighborhood of 75 percent of our limits of $25,000," but by this time, after a delay of two months, Mr. Gibbs had retained an attorney. On behalf of Michael, he filed a lawsuit against the Louwaerts in the Superior Court of Alameda County, California, on July 31, 1969. Not until August 19, 1970, while the suit was still pending, did Thomas McInerney, State Farm's attorney, advise the plaintiff that the company had decided to offer its policy limits as a settlement.

A judgment in favor of the plaintiff against Steven Louwaert in the amount of $135,673.31 was rendered on June 7, 1971,[1] of which State Farm paid $27,281.70 (the $25,000 plus court awarded costs). The Louwaerts assigned their cause of action against State Farm to Gibbs, and on March 3, 1972, he brought an action in Alameda County against State Farm for the bad faith failure to settle his claim within policy limits. The plaintiff asked for the remaining $111,984.80, plus interest, as well as for $1,000,000 in punitive damages. After removal to a federal district court on the basis of diversity of citizenship, judgment was entered against State Farm on March 7, 1974, following a jury verdict, for $129,-745.76 (the $111,984.80 plus interest). The district court did not allow the jury to consider the punitive damages issue.

## II

This appeal and cross-appeal involve four issues:

(1) Was there sufficient evidence of State Farm's bad faith failure to accept a settlement within the limits of the Louwaerts' insurance policy?

(2) Did the trial court err in admitting into evidence certain testimony and documents?

(3) Did the court err in refusing to give certain proposed instructions submitted by State Farm?

(4) What are the merits of Gibbs' cross-appeal for punitive damages and a shifting of the burden of proof?

## III

■ Because this case is in federal court on the basis of diversity of citizenship, 28 U.S.C. §§ 1332, 1441 (1970), we apply "the law of the State": in this instance, California. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In California, an insurer operates under a good faith duty to accept a settlement:

> "[T]here is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement; . . . it is common knowledge that one of the usual methods by which an insured receives protection under a liability insurance policy is by settlement of claims without litigation; . . . the implied obligation of good faith and fair dealing requires the insurer to settle in an appropriate case although the express terms of the policy do not impose the duty; . . . in determining whether to settle the insurer must give the interests of the insured at least as much consideration as it gives to its own interests." *Crisci v. Security Insurance Co.,* 66 Cal.2d 425, 58 Cal.Rptr. 13, 16–17, 426 P.2d 173, 176–77 (1967).

Liability is not based on malice but rather on "failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing." *Id.,* 58 Cal.Rptr. at 17, 426 P.2d at 177. The insurer must settle when there is a danger of a high recovery:

> "When there is great risk of a recovery beyond the policy limits so that the most reasonable manner of disposing of the

---

1. No issue is raised in this proceeding as to the coverage of the policy or the validity of the underlying judgment.

claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim. Its unwarranted refusal to do so constitutes a breach of the implied covenant of good faith and fair dealing." *Comunale v. Traders & General Insurance Co.*, 50 Cal.2d 654, 328 P.2d 198, 201 (1958). *Accord, Johansen v. California State Automobile Association Inter-Insurance Bureau*, 15 Cal.3d 9, 123 Cal.Rptr. 288, 538 P.2d 744, 747 (1975).

Furthermore, "an insurer who fails to accept a reasonable settlement offer within policy limits because it believes the policy does not provide coverage assumes the risk that it will be held liable for all damages resulting from such refusal, including damages in excess of applicable policy limits." *Johansen, supra*, 123 Cal.Rptr. at 290, 538 P.2d at 746. Failure to settle because of the belief in noncoverage, even though in good faith, is an effort to further the insurer's own interests, and the insurer must therefore be willing to absorb losses resulting from its failure to settle. *Id.* 123 Cal. Rptr. at 292, 538 P.2d at 748; *Crisci, supra*, 58 Cal.Rptr. at 17, 426 P.2d at 177.

■ Applying these principles to this case, the jury reasonably could have found sufficient evidence to hold State Farm liable for its bad faith failure to settle Gibbs' insurance claim. State Farm was aware of the great risk of a recovery beyond the policy limits: Fey's status report of June 26, 1969, indicated that Michael would be totally disabled for at least one year and that he might lose his leg; on July 10, the Claims Committee acknowledged that a lawsuit was likely; and Perata testified at trial that a realistic estimate of Michael's injuries would have been in excess of $100,-000 had there been no policy limit.

State Farm also had a reasonable opportunity to accept a settlement. On numerous occasions, Mr. Gibbs told Fey and Mr. Louwaert that he wanted coverage only to the limits of the insurance policy. Fey and Louwaert wrote letters to State Farm apprising it of Gibbs' desire. Though no formal, written offer existed, the jury could find that Gibbs' statements gave State Farm a reasonable opportunity to settle the claim within the policy limits. Instead, State Farm failed to conduct any negotiations with Gibbs, neglecting its good faith duty to take affirmative action in settling the claim. *See Crisci, supra*, 58 Cal.Rptr. at 16–17, 426 P.2d at 176–77; *Garner v. American Mutual Liability Insurance Co.*, 31 Cal. App.3d 843, 848, 107 Cal.Rptr. 604 (1973). State Farm's reliance on *Merritt v. Reserve Insurance Co.*, 34 Cal.App.3d 858, 877–79, 110 Cal.Rptr. 511 (1973), is misplaced, for in that case no reasonable settlement opportunity existed.

■ State Farm argues that since there was a legitimate question about whether the intentional injury exclusion applied, it cannot be blamed for delaying settlement. In California, a minor is liable for his torts as long as he possessed the state of mind necessary for the commission of the particular wrong with which he is charged. California Civil Code § 41 (West 1954); *People v. Lara*, 67 Cal.2d 365, 62 Cal.Rptr. 586, 432 P.2d 202, 213 (1967), *cert. denied*, 392 U.S. 945, 88 S.Ct. 2303, 20 L.Ed.2d 1407 (1968); *Mullen v. Bruce*, 168 Cal.App.2d 494, 335 P.2d 945, 947–48 (1959). Thus, it is conceivable, though very unlikely, that a jury might have found that Steven intended to injure Michael when he pointed the gun at him. Even with this possibility, which neither the jury nor any party involved in the case ultimately accepted, a good faith belief in noncoverage does not insulate an insurer from liability for failure to settle a claim. *Johansen, supra*, 123 Cal. Rptr. at 292, 538 P.2d at 748; *Comunale, supra*, 328 P.2d at 202.

■ State Farm also contends that since the compromise or release of a minor's cause of action must have court approval, *Burge v. City and County of San Francisco*, 41 Cal.2d 608, 262 P.2d 6, 9–10 (1953), Mr. Gibbs' requests did not constitute a meaningful settlement opportunity in the absence of a prior court ruling. This argument is naive. State Farm could have agreed to pay Michael's expenses to the

limit of the policy and then have sought court approval before making any payments. This would have allowed it to conform to the good faith requirement of California case law.

## IV

■ State Farm argues that the trial court erred in admitting into evidence the "self-serving" testimony of Mr. Gibbs that he "would have settled for the amount of the medical bills." Defense counsel had ample opportunity to cross-examine Gibbs as to his sincerity, however. Furthermore, documents and the testimony of other witnesses indicated that Gibbs had, in fact, made this statement at the time of the accident. Evidence is always "self-serving" in the sense that it is intended to benefit the party who offers it. Since the jury remained free to consider the value and weight of Gibbs' testimony, the court did not err in admitting it.

The court's admission of two letters from Louwaert to McInerney, expressing Louwaert's opinion that Gibbs would have been happy with a settlement within the policy limits, is contested on the ground that the letters contained hearsay. But the court instructed the jury that these letters were admitted for the limited purpose of proving that State Farm and its attorney had received this information. Because they were not admitted to show the truth of matters asserted therein, they did not contain hearsay. Fed.R.Ev. 801(c).[2]

■ State Farm also finds hearsay in an October 16, 1970, interoffice memorandum from Perata, the Divisional Claims Superintendent, to Loughran, the Superintendent of General Claims, which quoted Fey as stating that Gibbs would have accepted a settlement within the policy limit. This memorandum fits within the business records exception to the hearsay rule. Fed. R.Ev. 803(6). The testimony of several witnesses established State Farm's "regular practice" of preparing memoranda relating to a claim and of circulating them among its departments, and Fey was "a person with knowledge" under Rule 803(6) who offered his opinions near the time of the accident.

## V

■ State Farm also contests the trial judge's refusal to give two of its proposed instructions. Proposed instruction No. 35 was:

"A demand for settlement must be composed of the element of the amount of the demand and of reasonable time limitations with respect thereto. The mere sending of medical and hospital bills and medical reports to an insurance company does not in and of itself constitute a demand."

This instruction would have been inapplicable, however, for no evidence indicated that Mr. Gibbs sent bills or reports to State Farm. Proposed instruction No. 36 was:

"In the absence of knowledge on the part of a claimant as to the amount of insurance available and as to the amount of bills that would be rendered in the treatment of the injury, any hindsight declaration that a sum less than policy limits would have been accepted prior to the hiring of an attorney must be regarded as self-serving and treated with suspicion."

The trial judge also properly refused this instruction since the evidence showed that Mr. Gibbs had informed Fey on the day following the accident of his willingness to settle within policy limits.

## VI

Gibbs' cross-appeal asserts that he should have been allowed to submit the issue of punitive damages to the jury, and that the burden should have rested on State Farm to show lack of bad faith in its failure to settle

---

**2.** In diversity cases, we apply the Federal Rules of Evidence when, as here, they cover the points in dispute. *See Hanna v. Plumer*, 380 U.S. 460, 464–74, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Papizzo v.*
*O. Robertson Transport, Ltd.*, 401 F.Supp. 540 (E.D.Mich.1975). We discern no conflict between California's evidentiary laws and the Federal Rules, which must govern the conduct of federal judicial proceedings.

the insurance claim. Since Gibbs filed his cross-appeal for the limited purpose of establishing the legal issues in the event of a reversal and retrial, we have no occasion to consider these contentions.

THE JUDGMENT IS AFFIRMED AND THE CROSS–APPEAL IS DISMISSED.

ELY, Circuit Judge (concurring):

I concur in the disposition of the cross-appeal. I also concur in the disposition of the appeal, but this I do with extreme reluctance.

The pertinent exclusion clause of the contract exempted from coverage all bodily injury "caused intentionally by or at the direction of the insured." In light of the facts of this case, State Farm reasonably could have believed that, under the explicit terms of the agreement, the insured was not entitled to coverage. I therefore find it difficult to accept the conclusion that liability should be fixed on the insurer. Nevertheless, we are obliged to apply California law, and the California courts appear to have adopted every possible interpretation militating in favor of an insurer's liability. Thus, I conclude that I cannot logically protest the result reached by my Brothers.