92 F.3d 1193
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NEW HAMPSHIRE INSURANCE COMPANY, Plaintiff-Appellant/Cross-Appellee,
v.
UNITED STATES of America; James Weatherford,
Defendants-Appellees/Cross-Appellants.
 No. 95-55245, 95-55246.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1996.
Decided Aug. 2, 1996.
 
 Before: GIBSON,* NOONAN, and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellant/Cross-Appellee New Hampshire Insurance Company ("NHIC") filed this action seeking a declaration that it owed Appellee/Cross-Appellant United States no more coverage as an additional insured on its policy following a judgment against it in a prior Federal Tort Claims Act (FTCA) action. The United States counterclaimed for breach of the duty to defend, breach of the implied covenant of good faith and fair dealing, and punitive damages. The district court granted the United States' motion for summary judgment on the coverage issue and the breach of contract issue and submitted the bad faith issue to the jury, which awarded the United States both compensatory and punitive damages. The district court, however, granted NHIC's renewed motion for judgment as a matter of law on the bad faith claim, setting aside both the compensatory and punitive damages awards. NHIC appeals the district court's grant of summary judgment in favor of the United States on the coverage claim and the district court's failure after granting its renewed motion for judgment as a matter of law on the bad faith claim to vacate the jury's award of attorney's fees incurred as the result of NHIC's tortious breach of its duty to defend the United States in the prior FTCA action. The United States cross appeals the district court's grant of NHIC's renewed motion for judgment as a matter of law on the bad faith claim. We affirm in part and reverse and remand in part.
 
 I. BACKGROUND
 
 3
 The essential facts are undisputed. On March 25, 1987, James Weatherford was driving his pickup truck while acting in the scope of his duties as a civilian employee of the United States Navy when he struck motorcyclist John Luz, seriously injuring him. Weatherford was insured by Appellant New Hampshire Insurance Company at the time of the accident. The United States qualified as an additional insured under the policy's provision purporting to cover "any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part." NHIC, however, did not inform the United States of this fact until January of 1989. The policy limits provided for $300,000 maximum liability coverage per accident and $100,000 maximum per injury. Under California law, loss of consortium claims are considered separate injuries for purposes of policy coverage limits. When the policy was renewed for 1986-87, NHIC changed the language of the policy so that loss of consortium claims would not be considered a separate injury. It is undisputed, however, that NHIC failed to give Weatherford adequate conspicuous notice of the change in coverage, meaning that NHIC was bound to provide Weatherford with the higher prior coverage under California law.
 
 
 4
 NHIC initially learned of the accident on April 3, 1987, when Luz's attorney, Craig Klein, sent it a demand letter. NHIC responded by establishing a reserve of $100,000. Five days later, Klein sent NHIC a second letter stating that he intended to file suit against the United States on behalf of the Luzes accompanied by a copy of the accident report indicating that it had occurred while Weatherford had been acting in the scope of his employment. Despite an internal memorandum from an NHIC supervisor dated August 1987 recognizing that the United States may have been an additional insured under the terms of the policy, NHIC took no action to safeguard the United States' interests. Instead, NHIC tendered defense of the potential suit against Weatherford to the Navy in October of 1987 and informed the Navy that it expected to be indemnified for any amounts paid out to settle the Luz's claims. NHIC also engaged in settlement negotiations with Klein in which it urged him to sue the United States. Continuing in the same vein, NHIC sent Klein a copy of the accident report with everything deleted except for Weatherford's statement that he had been driving on government business at the time of the accident. Klein made it clear during the course of the settlement negotiations that Luz was unwilling to settle the case against Weatherford unless he was able to reserve his rights to proceed against the United States. NHIC provided the United States with none of its correspondence with Klein. NHIC concedes that its conduct was inconsistent with its duty to an additional insured, but claims it was due to a mistake rather than bad faith.
 
 
 5
 On October 18, 1988, John Luz and his wife, Sharon Luz, filed suit in district court against the United States and Weatherford under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (1988). John Luz claimed damages from his physical injuries, while Sharon Luz claimed damages for loss of consortium. The day before, NHIC's attorney had advised it that the United States qualified as an additional insured as a matter of law under the terms of the policy. As such, NHIC owed the United States a duty of good faith and fair dealing and was precluded from settling the case absent the United States' permission. Instead of immediately informing the United States that it was an additional insured, NHIC urged Klein to attempt to contact Assistant United States Attorney John Robinson in order to obtain the United States' consent to settle the case against Weatherford without having to tell the United States that it was entitled to coverage under the policy. There is no evidence of whether Klein ever made such overtures.
 
 
 6
 During the course of a mandatory settlement conference held January 31, 1989, NHIC was forced to admit to the United States that it was an additional insured. Following the settlement conference, NHIC took the position that it owed the United States a total of $100,000 coverage under the terms of the policy because Sharon Luz's loss of consortium claim and her husband's personal injury claim were based on the same injury. The United States adopted the position that the loss of consortium claim was a separate injury entitling it to an additional $100,000 coverage. Unable to agree, the United States and NHIC subsequently stipulated that NHIC would pay the Luzes $100,000 in partial settlement of their claims against the United States and that a dispute existed between the two parties regarding the scope of coverage. Weatherford was later dismissed from the suit in accordance with § 2679(b) of the FTCA, and the case proceeded to a bench trial, in which John and Sharon Luz were awarded $2.1 million and $300,000, respectively.
 
 
 7
 One week later, NHIC filed a declaratory relief action against the United States seeking a declaration that it owed nothing more on the policy. The United States filed an answer and counterclaim seeking compensatory damages for NHIC's breach of its duty to defend, breach of its duty of good faith and fair dealing, and punitive damages. Following cross motions for summary judgment on the coverage issue, the district court concluded that NHIC owed the United States an additional $100,000 coverage under the terms of the policy for Sharon Luz's loss of consortium claim. The United States then filed a motion for summary judgment on the breach of contract issue, which the district court granted, awarding the United States $141,125 for the reasonable cost of defending the prior FTCA suit. The district court also awarded the United States $11,666 prejudgment interest on the additional $100,000 coverage. The district court denied the United States' motion for summary judgment on the bad faith issue and submitted the claim to the jury.
 
 
 8
 The jury was instructed to determine whether NHIC had breached the implied covenant of good faith and fair dealing in its actions owed to the United States and, if so, whether that unreasonable behavior was why Sharon Luz never made a policy limits settlement offer. Finally, the jury was asked to determine the amount of damages resulting from that conduct. The jury answered yes to both questions and awarded the United States $377,791.92 in compensatory damages including $22,500 in attorneys fees incurred in enforcing its policy rights in the present action) and $1.9 million in punitive damages. The district court, however, granted NHIC's renewed motion for judgment as a matter of law and struck both the compensatory and punitive damage awards, reasoning that "[w]here there is no tendered offer of settlement, as is the case here, the defendant is not liable for an excess judgment above policy limits."
 
 II. DISCUSSION
 A. The Coverage Claim
 
 9
 It is undisputed that the United States is an additional insured under the terms of Weatherford's policy as one legally responsible for his acts or omissions because Weatherford was acting in the scope of his employment at the time of the accident. It is also undisputed that the terms of the policy purchased by Weatherford were ambiguous and would have been interpreted as providing for separate coverage for Sharon Luz's loss of consortium claim under California law. See Abellon v. Hartford Ins. Co., 212 Cal.Rptr. 852, 858-59 (Cal.App.1985). It is further undisputed that NHIC altered the terms of Weatherford's policy prior to the accident so as to define "injury" in a manner that would exclude separate coverage for loss of consortium claims. Finally, all parties agree that Weatherford is entitled as the named insured to the former higher coverage limitations under California law because NHIC did not provide him with adequate notice of this change in his coverage. Allstate Ins. Co. v. Fibus, 855 F.2d 660, 663 (9th Cir.1988) (when a renewal policy is issued and the insurer fails to clearly and conspicuously notify the named insured of the specific reduction in coverage, the insurer is bound by the prior greater coverage). The sole issue is whether the United States as an additional insured is similarly entitled to enforce the former higher coverage limitations against NHIC based on NHIC's inadequate notice to Weatherford. This Court reviews the district court's grant of summary judgment de novo. Jones v. Union Pacific R.R., 968 F.2d 937, 940 (9th Cir.1992).
 
 
 10
 NHIC asserts that the United States as an additional insured is not entitled to enforce the former higher coverage limitations against it as Weatherford would as the named insured. Unlike Weatherford, the United States relied on no prior coverage representations, making the inadequacy of notice to the named insured irrelevant. Because the United States was unaware that the prior terms of the insurance policy even existed until after the policy had been amended to reduce the coverage limitation, NHIC argues that the United States is entitled to no more than $100,000 coverage for both Jon Luz's personal injuries and his wife's loss of consortium claim under the revised terms of Weatherford's policy. NHIC relies on the Tenth Circuit's opinion in Government Employees Ins. Co. v. United States, 400 F.2d 172 (10th Cir.1968) (GEICO ). That case involved a U.S. serviceman who was involved in an automobile accident while acting in the scope of his employment. After the plaintiff recovered a judgment against the United States under the FTCA, the United States filed a third-party complaint against the serviceman's insurer asserting that it qualified as an additional insured under the terms of the serviceman's policy. The insurance company denied coverage, asserting an endorsement later added to the terms of the serviceman's original contract excluding the United States as an additional insured. The Tenth Circuit panel held that the subsequent endorsement excluding the United States as an additional insured was enforceable because the insurance company had provided the named insured with legally adequate notice of the change in coverage. Id. at 175. Even if the notice were inadequate, the Court went on to write that the United States, unlike the named insured, would not be entitled to assert the greater coverage against the insurance company because, unlike the named insured, it had not "relied upon the assumption that the policy remains unaltered, for indeed, the third party has not relied at all on the insured's contract of insurance." Id. at 175-76.
 
 
 11
 With all due respect to the Tenth Circuit, we find GEICO unpersuasive. The principle of reasonable reliance is a corollary of the well-accepted principle that, under California law, "the renewal of an insurance policy means the continuation of coverage on substantially the same terms." American Cas. Co. v. Baker, 22 F.3d 880, 893 (9th Cir.1994). "A renewed insurance policy is chronologically new but perpetuates the terms and conditions of the original policy unless the parties provide otherwise." Sandgren v. Fire Ins. Exch., 134 Cal.Rptr. 590, 591 (Cal.App.1976). Here there was a renewal with no agreement to change the material terms of the policy limits. Based on the above caselaw, any material change was ineffective, meaning that the original policy limits continued in force. As one of a class for whose benefit the insurance contract was expressly made, the United States is entitled as an additional insured to enforce the terms of the policy against the insurer as a third party beneficiary even though it was not an actual party to the insurance contract. Northwest Mut. Ins. Co. v. Farmers Ins. Group, 143 Cal.Rptr. 415, 421-22 (Cal.App.1978). Having determined that NHIC's unilateral action was insufficient to alter the former terms of the policy's coverage limitations, that the terms of those former coverage limitations continued unabated in the renewed policy, and that the United States is entitled to enforce those terms against the insurer as a third party beneficiary, we see no need for actual reliance on the part of the additional insured. As a result, we conclude that the United States is entitled to assert the former higher coverage limitations against NHIC.
 
 B. Bad Faith
 
 12
 Because the Luzes never offered to settle the case within the policy limits, the district court granted NHIC's renewed motion for judgment as a matter of law on the bad faith claim, concluding, "Where there is no tendered offer of settlement, as is the case here, the defendant is not liable for an excess judgment above policy limits." The district court relied primarily on two cases: Johansen v. California State Auto Ass'n Intern-Ins. Bureau, 538 P.2d 744 (Cal.1975), and State Farm Mut. Auto Ins. Co. v. Allstate Ins. Co., 88 Cal.Rptr. 246 (Cal.App.1970). The United States argues that the district court reads these cases overly broadly and that NHIC is liable for any damages proximately caused by its bad faith conduct, regardless of policy limits. This Court reviews the district court's grant of NHIC's renewed motion for judgment as a matter of law de novo. Bank of the West v. Valley Nat'l Bank, 41 F.3d 471, 477 (9th Cir.1994).
 
 
 13
 We are unaware of any California cases placing such an explicit limitation on an insured's ability to recover compensatory damages for an insurer's breach of the implied covenant of good faith and fair dealing. We believe the key to be proximate causation. Both of the cases relied on by the district court as well as the entire line of bad faith insurance tort/breach of contract decisions are based on the seminal case of Comunale v. Traders & Gen. Ins. Co., 328 P.2d 198 (Cal.1958). In that case, the insured sued the insurer for the balance of a judgment against him after the insurer had refused to defend him and had rejected reasonable settlement offers within the policy limits. The Comunale court held that by failing to accept reasonable settlement offers within the policy limits, the insurer had breached the covenant of good faith and fair dealing implicit in every insurance contract that neither party would do anything to injure the right of the other to receive the full benefits of the agreements, and accordingly held the insurer liable for the full amount of the judgment against the insured regardless of policy limits. Even though the insurer asserted a good faith belief that there was no coverage under the policy, the court concluded: "An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract." Id. at 202.
 
 
 14
 The two cases relied upon by the district court each follow Comunale 's lead by holding that an insurer who breaches its duty of good faith by failing to accept reasonable settlement offers is liable for the entire judgment against the insured, regardless of policy limits. Johansen, 538 P.2d at 746; State Farm, 88 Cal.Rptr. at 258-61. By no means, however, does either case state that failure to accept a reasonable settlement offer within the policy limits is the exclusive means by which the insured may recover in excess of the policy limits against an insurer who breaches its duty of good faith and fair dealing. NHIC can point to no case that does. State Farm, in fact, makes it clear that the measure of damages recoverable for an insurer's breach of its duty of good faith and fair dealing depends more on proximate causation than applicable policy limits. "Resort to the appropriate rule of damages for the breach is more vital than the policy's ceiling on indemnity." State Farm, 88 Cal.Rptr. at 259. After noting that California cases have typically categorized the refusal to settle cases as sounding in both tort and breach of contract and the refusal to defend cases as breach of contract rather than tort, the court wrote: "The point here is that the damages, whether within or above the policy limit, must proximately result from the breach.... Thus the Comunale dictum voices what is usually but not invariably true. As we perceive the rule, damages for breach of the duty to defend are not inexorably imprisoned within the policy limit but are measured by the consequences proximately caused by the breach." Id.
 
 
 15
 Subsequent decisions have expanded the duty of good faith and fair dealing originally identified in Comunale beyond the duty to defend and the duty to accept reasonable settlement offers within policy limits. These cases allow the insured to recover damages proximately caused by any number of bad faith practices committed by the insurer. In Gruenberg v. Aetna Ins. Co., 510 P.2d 1032 (Cal.1973), the Supreme Court of California recognized that the "duty to accept reasonable settlements" and the "duty not to withhold unreasonably payments due under a policy" are "merely two different aspects of the same duty." Id. at 1037. "Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." Id. at 1038. Noting that the breach sounded in tort as well as in contract, the court wrote that the insured properly pleaded damages for economic loss and mental distress proximately resulting from the insurer's breach. Id. at 1042. In Silberg v. California Life Ins. Co., 521 P.2d 1103 (Cal.1974), the Supreme Court of California upheld a jury verdict awarding the insured $75,000 in compensatory damages for physical damages and mental distress proximately caused by the insurer's bad faith failure to make payments due under the terms of a disability policy. Id. at 1108. In Egan v. Mutual of Omaha Ins. Co., 620 P.2d 141 (Cal.1979), appeal dismissed, cert. denied, 445 U.S. 912 (1980), the Supreme Court of California held that "an insurer may breach the covenant of good faith and fair dealing when it fails to properly investigate its insured's claim." Id. at 145. In doing so, the Egan Court affirmed the jury's award of $5,600 in general compensatory damages and $78,000 in compensatory damages for emotional distress. Id. at 144. These decisions make it clear that an insured's ability to recover compensatory damages proximately caused by the insurer's bad faith in excess of policy limits is by no means limited to cases in which the insured has refused a reasonable settlement offer within policy limits.
 
 
 16
 NHIC urges this Court to affirm the district court's order on the alternative ground that its bad faith was not the proximate cause of the judgment against the United States. It asserts there is no evidence that Sharon Luz would have settled her claim within policy limits had NHIC made the additional $100,000 available to her at the outset. It points to record evidence that at all times there was at least a $600,000 gap between what the Luzes demanded for settlement of their combined claims and what the United States was willing to pay. The jury, however, specifically resolved this issue in favor of the United States, and there is ample evidence supporting its finding that NHIC's unreasonable conduct proximately resulted in the United States' inability to reach a policy limits settlement with Sharon Luz. While there was a $600,000 settlement gap between the highest settlement offer and both Jon and Sharon Luzes' combined claims, Sharon Luz may have been willing to settle her claim separately within the $200,000 policy limit had NHIC not radically diminished the United States' bargaining power by: (1) failing to inform the United States for two years that it was an additional insured; (2) keeping the United States in the dark regarding ongoing settlement negotiations with the Luzes; (3) disclosing to the Luzes the fact that Weatherford was acting in the scope of his employment with the United States at the time of the accident; (4) actively encouraging the Luzes to sue the United States; (5) attempting to obtain the United States' consent to settle on behalf of Weatherford without disclosing to the United States its status as an additional insured; and (6) refusing to offer the additional $100,000 toward a potential policy limit settlement with Sharon Luz. In addition, there is further evidence in the record supporting the jury's inference that the Luzes would have been willing to settle within policy limits absent NHIC's sabotage of the United States' bargaining position, specifically: (1) internal NHIC memoranda indicating that the Luzes were interested in making a policy limit settlement but had elected to hold off in order to pursue a potential claim against the named insured's employer, the United States; and (2) a July 17, 1989 letter from NHIC's attorney discussing the possibilities of negotiating a policy limits settlement on the loss of consortium claim. As such, we reinstate the jury's award of compensatory and punitive damages based on NHIC's breach of its duty of good faith and fair dealing.[1]
 
 III. CONCLUSION
 
 17
 For the aforementioned reasons, we affirm the district court's judgment that the United States is entitled to an additional $100,000 in coverage as an additional insured. We reverse the district court's order granting judgment as a matter of law on the United States' bad faith claim and remand with instructions to reinstate the jury's award of compensatory and punitive damages.
 
 
 
 *
 The Honorable Floyd R. Gibson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because we reverse the district court's order granting NHIC's renewed motion for judgment as matter of law on the bad faith claim, we need not reach the issue of whether the district court erred in failing to strike $22,500 in Brandt fees as well. See Brandt v. Superior Court, 693 P.2d 796 (Cal.1985)