[Civ. No. 37977. First Dist., Div. Four. Feb. 9, 1977.]

SHARON COE et al., Plaintiffs and Respondents, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Defendant and Appellant.

982

**COUNSEL**

Spridgen, Barrett, Achor, Luckhardt, Anderson & James, R. Winfield Achor, Edward L. Lascher and Wendy Cole Wilner for Defendant and Appellant.

Mathews, Traverse & McKittrick and Francis B. Mathews for Plaintiffs and Respondents.

**OPINION**

**CHRISTIAN, J.**—State Farm Mutual Automobile Insurance Company appeals from a judgment, entered upon a jury verdict, holding it liable to

its insured's assignee for bad faith refusal to settle the assignee's wrongful death claim against the insured.

Appellant had insured Sten S. Strandberg and Bonnie Jean Strandberg against liability up to $25,000 arising from the use of a described automobile. While Mrs. Strandberg was driving the insured automobile on a highway in Humboldt County, it collided with a truck driven by Richard Coe. The circumstances of the collision were such as to indicate that Mrs. Strandberg was negligently responsible for it. Richard Coe received severe injuries.

Coe had been driving in the course and scope of his employment by McLaughlin Plumbing & Heating Company, whose workers' compensation insurance was carried by the State Compensation Insurance Fund. The employer immediately reported the accident to ·the fund, at its Eureka office. The information reported included the facts of appellant's liability coverage on the Strandberg vehicle and that the matter was being handled by Percy Moore, appellant's "field claims adjuster" in Eureka. On the same day, the fund informed Moore, by telephone, that it intended to assert against any recovery a lien for monies paid out on account of Coe's injuries.

Moore immediately reported the accident to appellant's office at Santa Rosa, advising that Coe had been seriously injured and that the workers' compensation carrier would have a "sizeable lien."[1] Appellant immediately established a $25,000 "reserve" for claims anticipated from the accident.

Francis B. Mathews, an attorney, communicated to appellant at its office in Eureka a settlement offer in behalf of Coe and members of Coe's family. The offer was written and hand-delivered in Eureka on

---

[1]On April 29, 1968, a month after the accident and shortly after the exchange of letters next described in the text, the State Compensation Insurance Fund notified State Farm in writing of the fund's right to reimbursement "for past and future workmen's compensation expenditures out of any settlement or judgment which may be obtained . . . [on the Coe claim(s)] . . . against your insured." The notice cited Labor Code sections 3859 and 3860 and the fund's right to a lien under Labor Code section 3856, subdivision (b). The total of the expenditures claimed and liened, as of April 29, 1968, was $11,258.

April 4, 1968, and reached appellant's Santa Rosa office, by transmittal from Percy Moore, on April 8. It is reproduced in full as follows:

"State Farm Insurance Co.
922 E Street
Eureka, California

Attention: Percy Moore

"Re: Coe vs Strandberg

Gentlemen:

"You have represented to us that the policy limits of the State Farm Insurance Co. public liability policy applicable to Mrs. Bonnie Jean Strandberg on March 23, 1968, was $25,000.00.

"Our office is representing Mr. Richard Coe (and Mrs. Coe and the children if Mr. Coe should unfortunately die as the result of his extreme injuries) at the present time solely for the purpose of presenting the offer of settlement herein made.

"This is a clear case of liability arising from Mrs. Strandberg pulling out onto highway 101 from a stop sign when Mr. Coe's vehicle was directly on top of the intersection.

"The injuries to Mr. Coe are extremely severe. He will lose the sight of one eye and will have one leg amputated. His burns are as severe as they can get and they cover almost all of his entire body. It is a miracle that he is still alive. His medical expenses (if he survives) will unquestionably exceed $20,000.00. If he should unfortunately die as the result of these extreme injuries, the wrongful death claim of his wife and children will far exceed $25,000.00.

"You have had an adequate period of time within which to investigate the accident and arrive at reasonable certainty as to both liabilities and damages as noted above.

"SETTLEMENT OFFER: On behalf of Richard Coe or Mrs. Coe and the children (as the case may be) and predicated upon the $25,000.00 policy limits represented to us, we hereby offer to accept the sum of $25,000.00

as a full and complete settlement of the personal injury and/or death claim of Mr. Coe and/or his wife and children arising out of the accident of March 23, 1968.

"TERM OF OFFER: This offer will remain open until 5:00 P.M. Monday, April 15, 1968. If acceptance of this offer has not been received at our office by 5:00 P.M., April 15, 1968, the offer will be withdrawn and the Coes will commit themselves to the uncertainties of litigation.

"Very truly yours,

"MATHEWS, TRAVERSE & McKITTRICK

"Francis B. Mathews"

Appellant responded to Mathews on April 9, 1968, as follows:

"MATHEWS, TRAVERSE & McKITTRICK
732 Fifth Street
Eureka, California 95501

Attention: Francis B. Mathews

Gentlemen: Claim No: 05-4052-638
 Insured: STRANDBERG, Sten S.

Your letter to Percy Moore dated April 4, 1968, has been received in this office. The terms of your offer to settle the above case for $25,000.00 remains open until 5:00 P.M. Monday, April 15, 1968.

Your settlement demand within the brief time limit specified is premature for the following reasons:

1. The obligation we have to our insured is to verify by reasonable documentary evidence the nature and extent of your client's injuries and damages;

2. You have not indicated that a release will be executed by the Workmen's Compensation carrier involved;

3. We are not certain as to who we should deal with until your client's condition and outcome has been determined. Are we to deal with your client alone, his heirs at law, or a guardian?

4. We require verification in the event of your client's demise, prior to settlement, as to the identity of all heirs at law.

5. I believe you will agree that we are entitled to a reasonable time in which to determine the question of liability. You imply that since your client was on an arterial highway he had an absolute right-of-way.

For your information we are proceeding with all due dispatch, with the investigation and shall appreciate your providing us with medical information, special damages incurred and anticipated, and the other matters outlined above.

You may rest assured that upon receipt of the very basic information requested, we shall promptly advise you of our position regarding settlement.

Very truly yours,
[s/] Robert C. Clausen
ROBERT C. CLAUSEN, Superintendent
Northern California Claims D24U26"

Attorney Mathews did not reply.

Richard Coe died, whereupon Sharon Coe brought a wrongful death action against Mrs. Strandberg for herself and her children as the decedent's heirs;[2] a verdict in the amount of $250,000 resulted.

Respondent Sharon Coe then gave Mrs. Strandberg a covenant not to execute upon the wrongful death judgment, took an assignment of Mrs. Strandberg's rights against appellant for bad faith refusal to settle, and commenced the present action. A jury returned a verdict in respondent's favor, which resulted in a judgment against appellant in an amount in excess of $300,000.

Appellant contends that as a matter of law respondent's letter of April 4, 1968, was not a "reasonable offer of settlement" for the rejection of which appellant could be held liable.

---

[2]Sharon Coe brought the wrongful death action as assignee of appellant's insured, individually and as guardian ad litem of the three children. The term "respondent," as used herein, generally refers to all plaintiffs.

■ Here it will be pertinent to review the controlling case law. The Supreme Court considered the liability of an insurer for failure to accept a settlement offer within policy limits in *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883]. The court stated that "[i]t is generally held that since the insurer has reserved control over the litigation and settlement it is liable for the entire amount of a judgment against the insured, including any portion in excess of the policy limits, if in the exercise of such control it is guilty of bad faith in refusing a settlement. (Citations.)" (*Id.,* at p. 660.) The *Comunale* court concluded that ". . . an insurer, . . . who refuses to accept a reasonable settlement within the policy limits in violation of its duty to consider in good faith the interest of the insured in the settlement, is liable for the entire judgment against the insured even if it exceeds the policy limits." (*Comunale* v. *Traders & General Ins. Co., supra,* 50 Cal.2d 654 at p. 661.)

The test for "determining whether an insurer has given consideration to the interests of the insured . . . is whether a prudent insurer without policy limits would have accepted the settlement offer. (Citations.)" (*Crisci* v. *Security Ins. Co.,* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173].) Liability based on bad faith does not require a showing of dishonesty, fraud or concealment. (*Id.,* at p. 430.) Rather, the *Comunale* decision "makes it clear that liability based on an implied covenant exists whenever the insurer refuses to settle in an appropriate case and that liability may exist when the insurer unwarrantedly refuses an offered settlement where the most reasonable manner of disposing of the claim is by accepting the settlement. Liability is imposed not for a bad faith breach of the contract but for failure to meet the duty to accept reasonable settlements, a duty included within the implied covenant of good faith and fair dealing. . . . [R]ecovery may be based on unwarranted rejection of a reasonable settlement offer. . . ." (*Crisci* v. *Security Ins. Co., supra,* at p. 430.)

The Supreme Court more recently addressed the issue of the *reasonableness* of a settlement offer in *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9 [123 Cal.Rptr. 288, 538 P.2d 744]. Citing both *Comunale* and *Crisci* with approval, the court stated as follows (15 Cal.3d at p. 16):

"Moreover, in deciding whether or not to compromise the claim, the insurer must conduct itself as though it alone were liable for the entire amount of the judgment. (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d at

p. 429.) Thus, the only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer. Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, or a belief that the policy does not provide coverage, should not affect a decision as to whether the settlement offer in question is a reasonable one."

In *Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142], it is said that "[b]ad faith implies unfair dealing rather than mistaken judgment or poor prognostication. [Citations.]" The principal factors upon which the adjudication of bad faith should turn are " '. . . the strength of the injured claimant's case on the issues of liability and damages; attempts by the insurer to induce the insured to contribute to a settlement; failure of the insurer to properly investigate the circumstances so as to ascertain the evidence against the insured; the insurer's rejection of advice of its own attorney or agent; failure of the insurer to inform the insured of a compromise offer; the amount of financial risk to which each party is exposed in the event of a refusal to settle; the fault of the insured in inducing the insurer's rejection of the compromise offer by misleading it as to the facts; and any other factors tending to establish or negate bad faith on the part of the insurer.' (*Brown* v. *Guarantee Ins. Co.* [1957] 155 Cal.App.2d at p. 689 [319 P.2d 69].)" (*Critz* v. *Farmers Ins. Group, supra,* at p. 796.)

The good faith requirement is summarized in *Merritt* v. *Reserve Ins. Co.* (1973) 34 Cal.App.3d 858 [110 Cal.Rptr. 511] as follows: "When a claimant offers to settle an excess claim within policy limits a conflict of interest immediately arises between carrier and assured. In such circumstances the carrier is required to evaluate the settlement offer in good faith, and good faith requires it to consider the interests of the assured equally with its own or, as some of the cases have said, to evaluate the settlement offer as though the carrier itself were liable for the full amount of the claim. If the carrier rejects the offer to settle within policy limits without having made an honest, intelligent, and knowledgeable evaluation of the offer on its merits, then the carrier has acted in bad faith and may become liable to its assured for consequential damages caused by its bad faith rejection." (*Id.,* at p. 873.)

Appellant contends that the "offer" stated in respondent's letter of April 4, 1968, was not a "reasonable" offer, within the meaning of the

case law summarized above, because it was not "capable of acceptance" for three reasons: (1) The parties to it were not specified in it; ▮ (2) its "subject matter" was not clear; and (3) ▮ its effectiveness required, but it did not mention or include, the consent and participation of the State Compensation Insurance Fund.

It will be recalled that Richard Coe was still alive on April 4, 1968, when the "offer" was made; he died on April 18, 1968. The "offer" was prefaced by the statement that the attorney communicating it (Mathews) was "representing Mr. Richard Coe (*and* Mrs. Coe and the children if Mr. Coe should unfortunately die as the result of his extreme injuries) . . . ." (Italics added.) The "offer" itself stated:

"On behalf of Richard Coe *or* Mrs. Coe and the children (as the case may be) . . . , we hereby offer to accept the sum of $25,000.00 as a full and complete settlement of the personal injury *and/or* death claim of Mr. Coe *and/or* his wife and children. . . ." (Italics again added.)

### (1)

▮ Appellant argues that this language is fatally unclear, as to the *parties* to the offer and *as a matter of law*, because the use of the above-emphasized terms "or" or "and/or" made it impossible to determine whether Richard Coe was a party to the offer and whether his children "would be represented by a guardian ad litem." This argument is not persuasive. It fairly appears that Richard Coe was an offeror, as to his own claim for personal injuries, while he lived. If he had released his own claim (if, and after, appellant had accepted the "offer" as made on his behalf), the question of who would settle on the children's behalf would not be involved because they would have no claim unless and until he died. While the latter event poses a distinct problem in any assessment of the offer (as next discussed under "(2)"), there appears to be no real question as to who the "parties" to it were. In all events, the claimed "uncertainty" in this respect did not make the offer unacceptable *as a matter of law*, as appellant contends.

### (2)

▮ Appellant makes a similar argument that the same "or" and "and/or" language is fatally unclear because it cannot be determined whether the offer covered Richard Coe's claim for injuries while he was alive, or Sharon Coe's and the children's potential claim for his wrongful

death, or to both. In this regard, appellant points out that a settlement by Richard Coe in his lifetime, for his own personal injuries, would not in itself have barred his widow and children from bringing a wrongful death action if he died later. (*Earley* v. *Pacific Electric Ry. Co.* (1917) 176 Cal. 79, 80-81 [167 P. 513]. See *Robison* v. *Leigh* (1957) 153 Cal.App.2d 730, 733 [315 P.2d 42].) Appellant does not contend that Sharon Coe and the children could not have released a potential claim for Richard Coe's wrongful death while he lived; the problem, according to the argument, was that the language of the "offer" was so unclear, as between the two claims it addressed as "and/or," that its acceptance by appellant could have left the insured (Mrs. Strandberg) open to a wrongful death claim.

Respondent replies that "[t]he use of the notation 'and/or' in an offer leaves it open to the offeree to designate *either* or *both*" (original italics) and that "[a]ll State Farm had to do was to accept the offer and require releases of *both* claims." This response has merit. The first statement comports with the rule of interpretation that "[t]he term 'and/or' is commonly defined to mean *either* 'and' or 'or.'" (*Powers Farms* v. *Consolidated Irr. Dist.* (1941) 19 Cal.2d 123, 128 [119 P.2d 717] [italics added].)

(3)

■ Appellant's strongest contention is that, as a matter of law, the April 4, 1968, letter from Mathews was not a settlement "offer," because the facts that the State Compensation Insurance Fund was neither a party to it nor mentioned in it, and that no provision had been made for its consent or for disposition of its right to reimbursement for worker's compensation benefits it had paid out on the Coe claims.

This contention is valid, and requires reversal. No settlement of any of the Coe claims against Mrs. Strandberg could have been effective, at any time, without the fund's written consent. (Lab. Code, §§ 3859, 3860, subd. (a); *Smith* v. *Trapp* (1967) 249 Cal.App.2d 929, 938, 940 [58 Cal.Rptr. 229].) As appellant points out, when the approval of a third party is necessary for a contract to take effect, there is no contract until such approval has been obtained. (*Santa Clara-San Benito etc. Elec. Contractors' Assn.* v. *Local Union No. 332* (1974) 40 Cal.App.3d 431, 436 [114 Cal.Rptr. 909].) Mathews' failure to offer or guarantee the fund's consent and release (in the April 4 letter, or during the brief life of the "offer" after appellant had replied to it on April 9, or in an extended or

renewed "offer" even after that) meant that none of his clients made an offer whose acceptance by appellant would have produced a valid settlement of the claims against Mrs. Strandberg. (*Smith* v. *Trapp, supra.*)

Respondent's reply to this argument rests upon the premises (1) that, although the interpretation of the April 4 "offer" was a question of law for the court, the determination of what its terms were was a question of fact for the jury; and (2) that the jury's finding in her favor, on this issue, is supported by substantial evidence in the form of proof of local custom and usage to the effect that provision for compensation carrier releases was an "implied term" of any settlement offer by a plaintiff.

Respondent's reply is unavailing. The compensation-carrier consent prerequisite of a valid settlement is imposed by law. Evidence of local professional custom may show intended compliance with the statutory requirement, but may not dispense with the necessity of conforming to the statute. When this deficiency in the offer was quite reasonably pointed out to Mathews in appellant's response, Mathews could have replied that the offer was intended to carry with it an assurance that before any settlement was paid the compensation carrier would be brought into a comprehensive resolution of all claims against the insured. This was not done. In the absence of reasonable provisions for the legal rights of the fund, we conclude that State Farm cannot be held liable for bad faith "rejection of a reasonable settlement offer" (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425 at p. 430), or for failing "to accept a reasonable settlement offer." (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 15 Cal.3d 9 at p. 12.)

 We also sustain appellant's additional contention that its reaction to the letter of April 4, 1968, did not constitute a bad faith "refusal" to settle under the controlling case law.

The question involves the separate elements (1) whether State Farm acted in "bad faith" with respect to the "offer," and (2) whether it in fact *refused* the "offer."

(1)

 A liability insurance policy includes "an implied covenant of good faith and fair dealing that neither party will do anything which will *injure the right of the other to receive the benefits of the agreement. . . .*" (*Crisci* v.

*Security Ins. Co., supra,* 66 Cal.3d 425 at p. 429 [italics added].) "When a claimant offers to settle an excess claim within policy limits . . . the carrier is required to evaluate the settlement offer in good faith, and good faith requires it to *consider the interests of the assured* equally with its own. . . ." (*Merritt* v. *Reserve Ins. Co., supra,* 34 Cal.App.3d 858 at p. 873 [italics added].)

Absent the offered and guaranteed written consent of the State Compensation Insurance Fund in Mathews' "offer" of April 4, 1968, acceptance by appellant of the "offer" would have left Mrs. Strandberg exposed to a recoupment action by the fund. As appellant points out, this is clear as a matter of law. (Lab. Code, §§ 3852, 3860 [subd. (a)]. See *Brown* v. *Superior Court* (1970) 3 Cal.3d 427, 432 [90 Cal.Rptr. 737, 476 P.2d 105].) It was also established as a fact by the evidence in this case.

Accordingly, acceptance by appellant of the "offer," as made, would have amounted to an abdication of its responsibilities to its own insured. Specifically, it would have breached its "implied covenant of good faith and fair dealing" not to "injure" her rights under its policy (*Crisci* v. *Security Ins. Co., supra,* 66 Cal.2d 425 at p. 429), and its obligation "to consider the interests of the assured equally with its own." (*Merritt* v. *Reserve Ins. Co., supra,* 34 Cal.App.3d 858 at p. 873.) Bad-faith refusal to accept a settlement offer cannot occur where "acceptance" would itself be bad faith. Reversal is similarly required on this basis.

## (2)

■ Appellant contends that under the evidence it did not in fact "refuse" Mathews' "offer," but only requested more time and information in its reply letter. It is on this point that respondent makes her questionable claim of bad faith on the basis of appellant's mere "failure to accept" the "offer." Whether appellant "refused" the "offer," and whether it could reasonably have acted otherwise in light of the 11-day deadline imposed by the offer's terms, were questions for the jury. Reversal is not indicated by appellant's contentions on this point alone.

■ Appellant is correct in its contention that the court erred when it permitted two lawyer-witnesses to be asked hypothetical questions which omitted the key facts of this case: the timing and nature of plaintiff's demand. In one instance, the question was: "If we consider a liability situation as we have discussed as is disclosed from this Highway Patrol

report and your situation such as I have discussed of a man with third degree burns over eighty-five percent of his body with an eye and a leg loss and the possibility that he will not survive, in your experience as an attorney skilled in the subject of handling personal injury claims and in the negotiations of settlements for personal injury claims you—do you have an opinion with respect to what response you would receive from an insurance company that had unlimited liability policy limits if you made them an offer of settlement in the sum of twenty-five thousand dollars?" to which the lawyer responded that an insurance company "couldn't get out their [*sic*] check book quick enough."

The other lawyer-witness was asked: "Now in the event that you had an unlimited policy of insurance available on the other side and you had a case of clear liability such as you have described in this instance regardless of whether Mr. Coe has survived or should die, and you had a wrongful death case; do you have from your experience an opinion as to what reaction you would receive from the insurance company if you made an offer to settle either the case of Mr. Coe or that of his wife and children for wrongful death for the sum of twenty-five thousand dollars?" He answered "if . . . I were the insurance company I would grab it and grab it fast."

In both instances the trial court overruled a timely defense objection which stated the ground (among others) that the particular question omitted material facts. As appellant now points out, the "material facts" omitted were the precise terms of the "offer" in question and the fact that appellant knew of the State Compensation Insurance Fund's lien claim when the "offer" was received. Since the latter fact was crucial, it was error to permit the questions to be answered as posed. (See *Waller* v. *Southern Pacific Co.* (1967) 66 Cal.2d 201, 210 [57 Cal.Rptr. 353, 424 P.2d 937]; Witkin, Cal. Evidence (2d ed. 1966) §§ 1179-1180, pp. 1092-1094.) The error was aggravated by the simplistic (and essentially inflammatory, although responsive) answers given by the respective witnesses.

Other contentions by appellant warrant discussion because the case may be retried. ▮ It is urged that the following instruction to the jury was erroneous:

"When there is a great risk of recovery beyond the policy limits so that the most reasonable manner of disposing of the claim is a settlement which can be made within policy limits, a consideration of good faith of

its insured's interests require [*sic*] the insurance company to settle the claim. The unwarranted failure or refusal of the insurance company to so settle constitutes a breach of the implied warranty of good faith and fair dealing.

"Under these circumstances, an insurance company which has rejected a settlement in bad faith may become liable to its insured for the full amount of the loss even in excess of policy limits."

Appellant contends that this instruction was erroneous because, although it accurately paraphrases certain language quoted in *Merritt* v. *Reserve Ins. Co., supra,* 34 Cal.App.3d 858 (see *id.,* at p. 872), it addresses the issue of the insurance carrier's bad faith in terms of its obligation *"to settle* the claim" (italics added) in an excess situation. This contention is sound. Under the controlling authorities actionable "bad faith" arises, not from an insurance carrier's obligation "to settle," but from unwarranted *failure to accept a reasonable settlement offer*; the holding of *Merritt* itself is to this effect. (See *Merritt* v. *Reserve Ins. Co., supra,* 34 Cal.App.3d 858 at pp. 871-877 and cases there cited.) The instruction should have been stated in proper terms, and it was erroneous and misleading as given.

Appellant's other claims of error in instructions, as given or refused, are not meritorious.

■ Appellant contends that it was error for the court to require respondent Sharon Coe to be identified by that name, as distinguished from her remarried name. On the opening day of trial, and before the case was called, respondent's counsel moved the court (in chambers) for a protective order to prohibit disclosure, to the jurors, of the fact that respondent Sharon Coe had remarried and that her present name was "Sharon Holland." The court denied this motion, but admonished counsel against emphasizing the fact of the lady's remarriage. After the jury had been selected, but before opening statements, respondent's counsel renewed the motion. The court considered the motion overnight, and granted it before opening statements were commenced on the following day. The lady was subsequently identified as "Sharon Coe" throughout the trial, and testified under that name.

Appellant challenges the court's ruling upon the ground that the rule against disclosure of a widow's remarriage, in an action for the wrongful

death of her husband (see, e.g., *Cherrigan* v. *City etc. of San Francisco* (1968) 262 Cal.App.2d 643, 652 [69 Cal.Rptr. 42]), should not apply in an *assignee* widow's bad faith action against the assignor's insurance carrier. The argument is vehemently stated in such terms as "lies" and "deception." Respondent replies that the lady's remarried name is irrelevant because her name was "Sharon Coe" when she took the assignment of Mrs. Strandberg's cause of action and when she commenced this action upon it. The only real stake here was the effect of the prohibited disclosure in terms of the jury's sympathy. Respondent's argument is correct in principle. (See *Cherrigan* v. *City etc. of San Francisco, supra,* 262 Cal.App.2d 643 at p. 652.) No error appears.

The judgment is reversed.

Caldecott, P. J., and Emerson, J.,* concurred.

Petitions for a rehearing were denied February 28, 1977, and respondents' petition for a hearing by the Supreme Court was denied April 28, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.