[Civ. No. 59094. Second Dist., Div. Three. Dec. 29, 1980.]

AETNA CASUALTY AND SURETY COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
GUADALUPE AVALOS et al., Real Parties in Interest.

COUNSEL

Coyle, Marrone & Robinson and J. Alan Frederick for Petitioner.

No appearance for Respondent.

Morton Skatzkin and Carter J. Stroud for Real Parties in Interest.

OPINION

**COBEY, Acting P.J.**—The Aetna Casualty and Surety Company, a corporation, has petitioned this court for a writ of mandate directing respondent Superior Court of Los Angeles County to vacate its order denying petitioner a summary judgment declaring, in effect, that it has discharged fully its obligations to its insured, real party in interest, Guadalupe Avalos, under a specified automobile liability policy which it issued to him and to render instead the summary judgment for petitioner that it sought. Respondent court denied appellant's motion on the ground that issues of material fact exist in petitioner's declaratory relief action.

The fundamental issue posed in this writ proceeding is whether an insurer is required either under the law of negligence generally or under the covenant of good faith and fair dealing, implicit in every insurance policy, to attempt to settle a possible but unaccrued wrongful death claim at the time it settles a personal injury claim against its insured filed on behalf of a severely injured individual, particularly when it exhausts the insurance payable under the policy in its settlement of the personal injury claim. We hold, for reasons that follow, that it is not, and we will therefore grant petitioner the peremptory writ of mandate it seeks.

## FACTS[1]

On April 3, 1975, Blas Gomez received severe head injuries when Guadalupe Avalos, petitioner's insured, negligently crashed his automobile, in which both were riding, into a utility pole. Gomez sustained a subdural hematoma and was rendered unconscious. He remained unconscious until his death on July 6, 1976.

Meanwhile, on August 15, 1975, Gomez, by a guardian ad litem, sued Avalos in respondent court for damages for his injuries in the accident (case No. SE C 16305). A month later Gomez' attorney contacted a claims adjuster of petitioner, supplied him with a copy of the police report on the single-car accident and informed him that Gomez had been unconscious since the accident. On October 6, 1975, John Giacomin, a suit representative of petitioner on casualty claims, informed this attorney of the $15,000 and $30,000 limits of the applicable policy that petitioner had issued Avalos, whereupon Gomez, through this attorney, demanded the purportedly applicable policy limit of $15,000 in exchange for an appropriate release. Giacomin, on behalf of petitioner, then examined the information which Gomez' attorney had supplied him regarding Gomez' medical condition. This included his Rancho Los Amigos hospital chart. Petitioner and Gomez, through Giacomin and Gomez' attorney, then negotiated a settlement of Gomez' personal injury claim for $15,000, which settlement respondent court approved on October 27, 1975, on petition of Gomez' guardian ad litem. Gomez' personal injury action was then dismissed upon his request and petitioner paid Gomez on November 20, 1975, apparently through his attorney, the agreed amount of $15,000 in full settlement of the personal injury claim.

During the negotiations for the settlement of this personal injury claim petitioner neither sought nor obtained a release from Gomez of a possible future unaccrued claim for Gomez' wrongful death.[2] It did this although it was informed prior to judicial approval of the settlement of the personal injury claim that Gomez' guardian ad litem then thought that he would not regain consciousness and that his condition would continue to deteriorate. But all that a board-qualified neurologist could

---

[1]These facts are undisputed.

[2]Respondent court has rendered in the declaratory relief action an order determining these facts to have been established on the basis of petitioner's response to a request for admission by Gomez' children.

aver in his declaration filed in opposition to petitioner's already-mentioned motion for summary judgment with respect to Gomez' then probable condition was as follows:

"3. That, one can assume, with reasonable medical certainty, that if an individual sustains a subdural hematoma, as a result of a tra[u]matic injury arising from a vehicular accident, that the condition is a life threatening medical problem and that one can die from the complications that arise from said injury.

"4. That if one has remained unconscious from the time of the injury, for an uninterrupted period of approximately six (6) months, the likelihood that complications will arise and the person will die is increased."

As we mentioned at the outset of this opinion, on July 6, 1976, Gomez, without regaining consciousness, died from the head injuries he sustained in the single-car accident. On November 10, 1976, the same attorney, who had negotiated for Gomez the settlement of his personal injury claim, demanded on behalf of Gomez' children the purported remaining $15,000 payable under petitioner's policy in settlement of their claim of damages for Gomez' wrongful death.[3] Petitioner apparently ignored this demand and consequently on January 7, 1977, this attorney filed in respondent court a wrongful death action on behalf of Gomez' children against petitioner's insured, Avalos (case No. SE C 20798). In May 1977 counsel for Avalos, retained by petitioner in the wrongful death action, stipulated to a judgment therein in the amount of $150,000 in return for plaintiffs therein executing a covenant not to execute on the judgment personally against Avalos providing he assigned to them all of his rights against petitioner. Thereafter respondent court approved this settlement of the wrongful death action on petition of the guardian ad litem of a minor heir of Gomez and by October 1977 apparently this settlement was fully performed.

Meanwhile on July 22, 1977, petitioner commenced its action in respondent court for declaratory relief (case No. C 207258) against Avalos and the children of Gomez. On October 6, 1977, Gomez' children filed in this declaratory relief action a cross-complaint against petitioner for $150,000 in damages on the theory that petitioner had breached the covenant of good faith and fair dealing implicit in the

---

[3]Gomez was divorced before his death.

policy which it had issued to Avalos in not attempting to obtain a release of the possible wrongful death claim at the time it settled Gomez' personal injury claim.

On January 21, 1980, petitioner moved for a summary judgment in the declaratory relief action. On February 19, 1980, respondent court denied the motion and petitioner then applied to this court for a writ of mandate to compel respondent court to grant its motion. We issued an alternative writ of mandate and have now heard oral argument in the matter following the filing of a return to our alternative writ. This return advised us of respondent court's entry of the already-mentioned order determining certain factual issues in the declaratory relief action, as already noted in footnote 2 hereto, and of respondent court's further order denying the cross-complainants in the declaratory relief action permission to amend their cross-complaint to allege a count of negligence.

## ISSUES

There are three primary issues before us. They are: (1) Is this an appropriate proceeding for relief in mandamus? (2) What is the monetary coverage that petitioner provided its insured, Avalos, in the automobile liability policy it had issued to him that is involved herein? (3) Was petitioner entitled to the summary judgment it sought in the declaratory relief action?

## DISCUSSION

### 1. *Mandate is appropriate here.*

Extraordinary relief by way of mandate to correct a completely erroneous denial of a summary judgment is occasionally justified by the extraordinary circumstances of a particular case. This is such a case. Here, respondent court denied petitioner's motion apparently because it believed that triable issues of material fact exist with respect to petitioner's failure to attempt to negotiate a settlement of a possible future wrongful death claim when it purportedly exhausted its policy coverage of its insured in settling a personal injury claim against him growing out of one accident. To our knowledge no such legal duty on the part of an insurer toward its insured either under the covenant of good faith and fair dealing implicit in every insurance policy or under the law of negligence generally has ever been recognized. If this be so, then petitioner was legally entitled to the summary judgment it sought and it

should not be compelled to undergo the expense of further discovery and trial to obtain an answer to a question of law which admits of but one answer. ■ In short, we hold that on the undisputed facts presented to respondent court, it had no discretion in the matter and, therefore, it was clearly obligated to grant petitioner's motion for summary judgment in petitioner's declaratory relief action. (See *Whitney's at the Beach* v. *Superior Court* (1970) 3 Cal.App.3d 258, 265, 266 [83 Cal.Rptr. 237].)

2. *Petitioner's liability to its insured for damages arising from Gomez' injuries and death was limited under the policy involved to $15,000.*

The pertinent portions of Avalos' policy issued by petitioner are as follows:

· "4. The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the Company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COVERAGES | LIMITS OF LIABILITY | | PREMIUM | |
|---|---|---|---|---|
| | Each Person | Each Accident | Car 1 | Car 2 |
| A. Bodily Injury Liability | $15,000 | $30,000 | $144. | $ |

"Insuring Agreements

"Coverage A—Bodily Injury Liability

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"Conditions

" . . . . . . . . . . . . . . .

"3. Limits of Liability (a) Coverage A. The limit of bodily injury liability stated in the declarations as applicable to 'each person' is the

limit of the Company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by one person as the result of any one accident; the limit of such liability stated in the declarations as applicable to 'each accident' is, subject to the above provision respecting each person, the total limit of the Company's liability for all damages, including damages for care and loss of services, arising out of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by two or more persons as the result of any one accident."

It seems clear to us that under a reasonable interpretation of the quoted condition in the policy limiting liability for bodily injury, including the ultimate injury of death, to one person and of the policy as a whole, petitioner's maximum liability to Avalos under the policy for both Gomez' injuries and his consequent death from such injuries was $15,000. (See *United Services Automobile Assn.* v. *Warner* (1976) 64 Cal.App.3d 957, 962, 963 [135 Cal.Rptr. 34]; *Valdez* v. *Interinsurance Exchange* (1966) 246 Cal.App.2d 1, 4, 7-8 [54 Cal.Rptr. 906].)[4] In other words, the first position of Gomez' attorney regarding the coverage of this policy was correct and his second position as regards this matter was incorrect. This appears to have been the conclusion of respondent court as well.

3. *Petitioner's motion for a summary judgment in its declaratory relief action should have been granted.*

As already noted, respondent court's basis for denying petitioner's motion for summary judgment in the declaratory relief action was that triable issues of fact exist regarding petitioner's failure to attempt to include in its settlement of Gomez' personal injury claim the possible then unaccrued claim for his wrongful death.

It is true that at the time petitioner settled Gomez' personal injury claim for the full monetary amount of its coverage of Avalos under the policy, Gomez was still unconscious as he had been since the accident six months earlier from his severe head injuries therein. But all that the

---

[4]This being so, petitioner's position that it had exhausted its policy's monetary coverage in settling Gomez' personal injury claim and, therefore, had no more coverage to offer in settlement of the claim of Gomez' children for his subsequent wrongful death was obviously correct.

board-qualified neurologist, subsequently retained by Gomez' children, could opine about Gomez' condition at the time the settlement of the personal injury claim was negotiated was that the prolonged period of unconsciousness which he had then undergone increased the likelihood that he would die from his subdural hematoma. This expert did not aver that death was then imminent; he merely alleged that its probability was increased.

Both sides in the negotiation of the settlement of Gomez' personal injury claim apparently were equally informed concerning the condition of his health. Gomez' attorney had to choose whether he would make immediately a claim against Avalos, petitioner's insured, for damages for Gomez' personal injuries alone or whether he would wait to see if Gomez died or whether he would combine the accrued claim for damages for Gomez' personal injuries with an unaccrued claim for damages for his possible future death. The problem this choice posed to Gomez' attorney was that under California law the heirs of a deceased can in a wrongful death action recover neither the medical expenses for the treatment of the deceased's injuries prior to his death nor damages for his pain and suffering from those injuries. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 891, p. 3181.) On the other hand, damages for both these items are recoverable in a personal injury action. (*Id.* at §§ 885, 886, pp. 3171-3172.) Consequently an attorney can be guilty of professional malpractice if he delays unduly making a claim for damages for personal injuries on behalf of even a severely injured client unless that client dies very promptly.

The insurer of the insured against whom such claims may be filed is in quite a similar position if liability is clear. If it does not settle the personal injury claim promptly and fairly, it will be found to have violated the covenant of good faith and fair dealing implicit in every insurance policy it issues. It cannot *prudently* wait to see if the individual severely injured by its insured dies. Should such individual's attorney decide to submit a combined claim for both personal injury and wrongful death, the insurer involved would clearly pay the latter at its peril in view of the fact that the wrongful death claim had not yet accrued and possibly might never accrue.

When considered against this background, it would seem that both sides to the negotiation of the settlement of Gomez' personal injury claim acted prudently and wisely in not trying to involve therein an unaccrued wrongful death claim, or in lieu of such involvement, waiting to

see if the wrongful death claim did thereafter accrue. Such wisdom and prudence on the part of Avalos' insurer, petitioner, cannot be deemed either bad faith or negligence by it toward its insured, Avalos.[5]

We so conclude for two further reasons as well. In the first place the settlement of Gomez' personal injury claim exhausted the monetary coverage of the policy, which was the minimum required by law.[6] Petitioner had nothing further to offer in settlement of the unaccrued wrongful death claim had such then been demanded. In this connection, we observe that there is nothing in the record before us even suggesting that the settlement of the personal injury claim was excessive or otherwise in bad faith or negligent. (See *Johansen v. California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 14-16 [123 Cal.Rptr. 288, 538 P.2d 744]; *Coe v. State Farm Mut. Auto. Ins. Co.* (1977) 66 Cal.App.3d 981, 989-990 [136 Cal.Rptr. 331].) Quite to the contrary respondent court apparently found the settlement fair, reasonable and in Gomez' best interests as Gomez' guardian ad litem alleged in his petition for judicial approval of the settlement, which petition had been prepared by Gomez' attorney.

In the second place, Gomez' attorney, as already noted, did not, as the claimant did in *Coe v. State Farm Mut. Auto. Ins. Co., supra,* 66 Cal.App.3d at pages 986-987, make a combined personal injury and wrongful death claim upon petitioner.[7] Had he done so, however, the law outside of California seems clear that petitioner would not have been required to interplead the various claimants to the inadequate insurance proceeds, but instead was privileged to prefer the personal injury claim, as it in effect did here, so long as the preference was made in good faith. (See *Richard v. Southern Farm Bureau Casualty Ins. Co.* (La.App. 1968) 212 So.2d 471, 478-480; *Castoreno v. Western Indemnity Company, Inc.* (1973) 213 Kan. 103 [515 P.2d 789, 795]; *State Farm Mutual Automobile Ins. Co. v. Hamilton* (D.S.C. 1971) 326 F.Supp. 931, 934.) We see no reason why this should not be the

---

[5]A refusal by petitioner to try in good faith to make a *prompt,* fair, and equitable settlement of Gomez' personal injury claim would have also violated Insurance Code section 790.03, subdivision (h)(5). (See *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880, 884 [153 Cal.Rptr. 842, 592 P.2d 329].)

[6]Avalos' policy with petitioner provided the minimum legally required financial responsibility under Vehicle Code section 16430.

[7]In this connection we note that in *Coe* the wrongful death claim accrued 14 days after the presentation of the combined claim. (*Id.* at p. 991.) Here, Gomez died some eight and one-half months after the settlement of the personal injury claim was negotiated.

law in California as well and if it is, then the situation presented in this case, where no combined claim was filed, is a fortiori situation to that governed by this rule of law.

When all is said and done, the inadequacy of the insurance coverage in this case was the choice of Avalos. Likewise the decision as to how the initial claim to petitioner should be made was the decision of Gomez' attorney and not of petitioner. To hold that petitioner under these circumstances either breached its covenant of good faith and fair dealing with its insured, Avalos, or was negligent toward him in not attempting to obtain a release of a potential but unaccrued claim for damages for wrongful death against him when it exhausted its insurance coverage available under the policy with him in settling the only claim then presented (that for damages for personal injuries) would be an unjustified extension of both the law of good faith and fair dealing and of negligence as between an insurer and its insured. Consequently, we will issue the writ of mandate requested by petitioner.

### DISPOSITION

Let a peremptory writ of mandate issue commanding respondent court to grant the summary judgment requested in the declaratory relief action by petitioner, the Aetna Casualty and Surety Company, a corporation (case No. C 207258) in the files of respondent court. Said summary judgment shall include a dismissal of the cross-complaint therein.

Allport, J., and Potter, J., concurred.

The petition of real parties in interest for a hearing by the Supreme Court was denied February 25, 1981.